UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREGORY A. FIGEL,

    Plaintiff,

v.                                                      Case No. 2:04-cv-164
                                                    HON. ROBERT HOLMES BELL

GERALD RILEY, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Gregory A. Figel, an inmate currently confined at the Alger Maximum Correctional Facility in Munising, Michigan, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Case Manager Denver McBurney, Program Coordinator Nathan Hoffman, and Chaplain Gerald Riley, all of whom are employed at the Alger Maximum Correctional Facility (LMF).[1]

        Plaintiff's compliant alleges that while he was confined at LMF, Defendants removed him from the Kosher Meal Program as an act of retaliation and threatened further retaliatory acts including denying Plaintiff copies of necessary legal documents. Plaintiff was initially receiving kosher meals based on his declaration of Judaism as his religious faith. In July 2002, Figel asked to be baptized by full immersion and subsequently changed his religious declaration to Reformed

---

[1] The undersigned notes that this action was initially dismissed on September 30, 2004, for failure to pay the filing fee after having three strikes. Plaintiff appealed the dismissal and the Sixth Circuit reversed, finding that two of the "strikes" were cases which had been reversed, in part, on appeal. (See docket #16).

Protestant. Figel then challenged the prison officials' denial of his request for baptism by full immersion in a civil rights action in which he claimed violations of his First Amendment rights and his rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 (the RLUIPA). On February 23, 2004, that case was resolved in favor of the defendant prison officials. Figel retained the declaration of Protestantism and, on April 28, 2004, was removed from the Kosher Meal Program following an administrative hearing based on a determination that the Protestant faith group does not require kosher meals. Plaintiff claims that Defendants violated his rights under the First Amendment and the RLUIPA.

Presently before the Court is Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is genuine issue of material fact for trial. *Id*. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff's response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim that they are entitled to summary judgment on Plaintiff's claim that the denial of a kosher diet violated his First Amendment right to freely exercise his religious beliefs. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, Plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning

institutional operations." *Id*. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id*. at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90. As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id*. at 90. "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996). Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added). A claimant need not be a member of a particular organized religious denomination to show sincerity of belief. *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

-4-

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the plaintiff's assertion that he was Jewish for the correct test – whether the plaintiff's beliefs were sincerely held. 196 F.3d at 320. The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a kosher diet. *Id*. at 318. The Second Circuit concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the continuing issue of material fact regarding the sincerity of the plaintiff's religious beliefs. *Id*. at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere. *Id*. at 1523.[2] As noted by the Tenth Circuit in *Mosier*[3], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere. *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

In support of their motion for summary judgment, Defendants assert that MDOC inmate Figel was a participant in the prison system's Kosher Meal Program based on his designation of Judaism as his faith preference. Defendants argue that once Figel designated the Protestant faith as his faith preference, he was no longer entitled to participate in the program since a kosher meal is not a requirement of that faith group, and would have been removed from the program in spite of his legal activities. However, Plaintiff asserts that his particular group of Christians believe that they

---

[2]The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[3]*See Mosier*, 937 F.2d at 1523.

-5-

are descendants of the Ten Tribes Northern Kingdom of Israel (The Lost Ten Tribes). Plaintiff states in his response that The Lost Ten Tribes adhere to old testament laws including the basic food laws found in Leviticus 11 and Deuteronomy 14. In addition, Plaintiff offers voluminous exhibits explaining the specifics of Kosher dietary law and the Biblical importance of such laws.

After reviewing the record in this case, the undersigned concludes that Plaintiff has succeeded in demonstrating the existence of a genuine issue of material fact regarding whether the conduct of Defendants in denying him a kosher diet violated his First Amendment rights. As noted above, the correct test for determining whether a prisoner is entitled to a Kosher diet is whether his beliefs are sincerely held. *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999). Sincerity of a religious belief is a question of fact. *United States v. Seegar*, 380 U.S. 163, 185. Whether Plaintiff's belief that he is required to have a Kosher diet is "sincerely held and . . . in [his] own scheme of things religious," is the factual issue that remains unresolved in this matter. *Id.* Whether a belief is sincere tests whether it is "truly held and religious in nature." *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir. 1987). "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation." *Mosier*, 937 F.2d at 1526. What exactly is required to test the sincerity of a religious belief is not entirely clear. It appears that sincerity must be based on a totality of the factual circumstances. Knowledge of the practices of a particular faith may be a factor in determining sincerity, but it cannot be an exclusive test of the sincerity of an individual's religious belief.[4] Whether Plaintiff sincerely believed that he must follow Kosher dietary laws, under the circumstances of this case, is a factual question. Plaintiff continues to assert that a Kosher diet is required by his religious beliefs. In the opinion of the undersigned, a

---

[4] As stated in *Mosier*, 937 F.2d at 1523, "while practice or nonpractice of a particular tenant of a religion may be relevant to sincerity, it is not conclusive."

genuine issue of fact exists whether Plaintiff holds a sincere religious belief which requires him to have Kosher meals. Therefore, the undersigned recommends that Defendant's motion for summary judgment be denied as to Plaintiff's First Amendment claims.

Plaintiff also asserts that Defendants violated his right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants argue that Plaintiff cannot demonstrate the requisite causal connection between his filing of a lawsuit and "adverse action" for the purposes of a First Amendment retaliation claim. Defendants assert that if they can show that they would have taken the same action regardless of Plaintiff's exercise of his First Amendment rights, they are entitled to summary judgment. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977). Defendants assert that Plaintiff would have been removed from the Kosher Meal Program as early as November 2002, when he changed his designated faith preference from Judaism to Protestantism. Defendants claim that the only reason Plaintiff was not removed from the Kosher Meal Program prior to April 2004, in spite of his faith preference change, was in an effort to avoid the appearance of a retaliatory motive for the removal. (Defendants' Exh. 1, 4 and 7). Defendants state that there was no further

need to avoid the appearance of impropriety once the litigation, in which Plaintiff advocated his new faith preference, had been resolved in favor of the defendant Chaplain.  Furthermore, Defendants argue that none of them were involved in the Librarian's decision as to whether Plaintiff's photocopying request would be granted.

In the opinion of the undersigned, Defendants have not met their burden with regard to the retaliation claim.  With regard to retaliation claims, conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial.  *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996).  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  Plaintiff must allege a "chronology of events from which retaliatory animus on the part of Defendants" could reasonably be inferred.  *Id*. At 108-109; *see also El-Amin v. Tirey*, 817 F. Supp. 694-699 (W.D. Tenn. 1993) ("A claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred" and "an inmate claiming retaliation must show more than a subsequent disciplinary charge") (citing *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (1988)).  In his complaint, Plaintiff alleged that Program Coordinator Nathan Hoffman interviewed him on his kosher meals grievance and became very argumentative and said:

> Do you want me to put your business on the floor?  You lost that lawsuit you filed on Chaplain Riley and that is why we removed you from the Kosher Meals Program.  If you wouldn't have filed the lawsuit you would still be in the Kosher Program.  I know a lot more than you think Mr. Figel.

Plaintiff asserts that he then informed Mr. Hoffman that the lawsuit against Chaplain Riley was still pending and Mr. Hoffman said:

> You burnt all your bridges Mr. Figel and you have nothing else coming including assistance in getting your legal documents copied.  You brought all this on yourself.

Plaintiff has alleged specific facts to support his conclusion that Defendants removed him the Kosher Meal Program and denied him photocopies in an attempt to retaliate against him. Accordingly, the undersigned recommends that Defendant's motion for summary judgment be denied as to Plaintiff's retaliation claims.

Plaintiff also claims that Defendant's conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 of the RLUIPA states:

(a) General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). Defendants argue that the RLUIPA claim is legally deficient since the absence of a Kosher diet for an adherent of the Protestant faith does not constitute a substantial burden, and a First Amendment free exercise claim is deficient based on Plaintiff's inability to demonstrate a necessity for kosher meals. However, if Plaintiff's beliefs are sincerely held, then denying him a Kosher diet could constitute a substantial burden. As noted above, there appears to be a genuine issue of material fact with regard to whether Plaintiff's beliefs are sincerely held. Moreover, it does not appear that

the burden on Plaintiff's religious beliefs would be in furtherance of a compelling governmental interest or would be the least restrictive means of furthering a potential compelling governmental interest. Consequently, Defendants' argument with regard to this issue lacks merit.

Furthermore, Defendants claim that they are entitled to qualified immunity on Plaintiff's RLUIPA claims because the law governing such claims was not definitively decided until after this action was filed. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An

official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id*.

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent."

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> "A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred."

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id*.

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

This action was filed by inmate Figel on July 29, 2004, before the law governing inmate religious claims advanced under the RLUIPA was definitively decided. In 2003, before this action was filed, the Sixth Circuit concluded that the RLUIPA, 42 U.S.C. § 2000cc-1, violated the Establishment Clause. *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003). On May 31, 2005, the United States Supreme Court reversed the Sixth Circuit's holding, finding that the RLUIPA, which increases the level of protection of prisoners' and other incarcerated persons' religious rights, does not violate the Establishment Clause. *Cutter v. Wilkinson*, 544 U.S. 709 (2005). Because the conduct giving rise to this cause of action, the removal of Plaintiff from the Kosher diet program, occurred in April of 2004, Defendants could not have known that the alleged misconduct would

implicate the RLUIPA. Therefore, in the opinion of the undersigned, Defendants are entitled to qualified immunity with regard to Plaintiff's RLUIPA claims.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to Defendants' motion for summary judgment with regard to his First Amendment claims. In addition, the undersigned concludes that Plaintiff's RLUIPA claims are barred by the doctrine of qualified immunity. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #45) be granted with regard to the RLUIPA claims and denied with regard to the First Amendment claims.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal those issues or claims addressed or resolved as a result of the Report and Recommendation. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

     /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: June 16, 2006